### BAILEY & WALTERS v. SIGMUND PETERS ET AL.

PRESUMPTION IS, THAT A PERSON DOING BUSINESS IN THIS COUNTRY, UNDERSTANDS ITS LANGUAGE.

> A person who undertakes to do business in this country is presumed to be able to transact business in the language of this country, and if he cannot, it is his duty to make that fact known; and if he does business without making that fact known he does it at his peril.
> [For other cases in point, see 7 Cyc. Dig., "Sales," §§ 286-323.—Ed.]

ERROR to Richland common pleas court.

The facts in this case are as follows:

Plaintiffs in error sold to defendants in error, at public auction in the city of Mansfield, Ohio, on March 3, 1902, a horse, sold as coming three, sound and broke double.

Plaintiffs sold the horse under the following rule, which was printed and attached to a post near the auctioneer's box, to wit:

"Guarantee on all draft horses sold by Bailey & Walters shall expire at 12 o'clock noon of the day following the day of sale,"

That the auctioneer called the attention of defendants in error and others present at the opening of the sale to this rule.

That the horse was not returned within the time limit, nor any notice given of the sickness of the horse until after the death.

That the horse lived about ten days after the sale.

Defendants claimed they were Germans and did not understand what the auctioneer said when he called the attention to the rules, admitting that they were present.

*Charge to jury:* The plaintiffs bring their action upon a promissory note, which note is set up by copy, and the interest which the note bears is set forth. There is no controversy on the plaintiff's cause of action. The plaintiffs, in reckoning the interests, have made rests. You are not authorized to do that. You will reckon the interest right along to the first day of this term of court, and you will find that amount for plaintiff.

Then we come to the question these parties have been litigating. The answer, in substance (and you will have it before you, to look at its terms) sets forth that this promissory note was given for the purchase of a horse, and that, as a part of the contract of sale, this horse was warranted to be sound; that it turned out he was not sound, but diseased, at the time, and that, from the disease, he died on the hands of the defendants; that the defendants, in endeavoring to cure him and protect him as against the disease, expended some thirty odd dollars, but the horse finally died.

To this claim of defendants, there is a general denial, denying all the allegations of this contract claim of defendants.

Although, in terms, there is a denial of the warranty, the attorneys for the parties now, in open court, admit there was a warranty but claim it was a limited one. So, you will see that the controversy narrows down to, not, in fact, whether there was a warranty, but, Was the warranty that was made, limited, as the plaintiff's contend?

The testimony tends to show that when the horse was put up for sale, the representation was made that this horse was "sound, three years old, and broken." If that representation was made to induce the sale of the horse, and it induced the defendants to bid on the horse, it constitutes what we call in law, a warranty. Or, in other words, the term "warranty," in warranting a horse, is not necessarily to be used, but any term that clearly imports that one party contracts that the horse is sound, and the other buys the horse on the faith of that contract, that, in law, constitutes warranty.

Bailey & Walters v. Peters.

We come to the real matter in dispute between the parties. Although not set up in the pleadings in any way, still it is contended under the denial in the reply—and the reply denies all the allegations of the cross-petition—that although these words were spoken, and spoken at the time of the sale of the horse, the parties understood that they were limited by this notice that was claimed to be hanging on the post. As a matter of course, if the parties knew there was a rule by which these words were limited, and bought with reference to that rule, they are bound by it, as they would be in any other transaction. But it is contended that the defendant could not read the English language, and that it was no notice to him. And it is contended that it was said in English, "This sale is governed by the same rules as heretofore," I do not quote the exact language, but the substance of it. You are to look at the parties. Did they understand that the old gentleman was a German and might not understand the English language clearly? Was there anything occurred to induce them to know that the old gentleman was a German? If they knew he was a German, I do not think any presumption arises that he could read the English language.

Gentlemen, treat these parties fairly. If this horse is sold under the warranty that is set up, then the parties are entitled to rely upon that warranty.

The next question is, Was the horse sound at the time he was sold? As a matter of course, if he was sound at that time, and he took sick a few miles out, the plaintiff would not be liable on the warranty. But you may look at the condition of the horse in an hour, or a day or two after the time he was sold, to determine the fact as to whether or not he was sound at the time of sale.

The verdict of the jury was for defendants.

**W. H. Gifford** and **J. P. Seward**, for plaintiffs in error.
**Andrew Stevenson**, for defendants in error.

PER CURIAM.

This is an action to recover on a promissory note.

The defendants admit the execution of the note but say that the same was executed to evidence the purchase price of a horse purchased by the defendants from the plaintiffs on March. 3, 1902; that said plaintiffs, as a part of the consideration of the purchase price of said horse, represented and warranted the same to be sound and free from disease, but that it was then afflicted with disease which resulted in the death of the horse in a few days or weeks after its purchase. They claim that by reason thereof, there was a total failure of consideration, and that defendants were put to great expense in the care and treatment and

nursing of the horse, and burying the same, and ask to recover the sum of $150 damages, and that sufficient of said damages be counterclaimed and set off against plaintiff's note, and that they may have judgment for the residue thereof.

Plaintiffs for reply deny generally the allegations of the answer and cross petition, and the issue so made up was tried to a jury, resulting in a verdict for defendant. Judgment was rendered thereon, and error is prosecuted to this court to reverse the same.

Counsel for plaintiff in error urge particularly upon the attention of this court, that the court below erred in its charge to the jury, and that the verdict is against the weight of the evidence, and we agree with both contentions of counsel for plaintiffs in error.

We think that the court erred in its charge to the jury, touching the ability of Leopold Peters to read the English language, and in saying to the jury that a copy of the rules printed in the English language was no notice to him, and when inquiring from the jury: "Did they understand that the old gentleman was a German and might not understand the English language?" Further inquiring: "Was there anything occurred to induce them to know that the old German was a German, and in the further statement that if they knew he was a German, there was no presumption that he could read the English language."

We are of the opinion that if any man undertakes to do business in any language, he represents, and the parties dealing with him have a right to understand, that he is able to deal in that language unless the contrary clearly appears.

If he was not able to transact business in this country in the language of this country, it was duty to protect himself by securing the services of someone who could aid him in that behalf, and therefore, when he undertook to act for himself, he, in effect, represented that he was able to take care of his side of the business transaction, and there is nothing appearing in this record that would make this case an exception to the rule.

As to the weight of the evidence, we think it clearly appears by the evidence of the defendant, Leopold Peters, that he knew what the rules were in former sales. True, he does not admit that he understood what the auctioneer said when he said that the rules of former sales should control this one, but claims that he could not understand so much English; yet he does say very clearly that he understood him to say that the horse was sound and well broken.

We think that if he understood that much in his behalf, he ought to have understood what was said on behalf of plaintiffs; but even if he did not, and he knew that the rules were posted there for the in-

Bailey & Walters v. Peters.

formation of purchasers at this sale, and if he knew that they were in a language that he could not read and could not understand, he engaged in the bidding at his peril, if he did not seek information from one who could read and could understand.

It was his duty, in other words, to advise himself when opportunity was offered, and if he failed, it was his mistake and not the fault of plaintiffs.

The plaintiff had a right to make the conditional warranty contained in the rules, and in sales made under these rules, the limitation thereof necessarily became a part of the contract.

The purchaser is at liberty to buy or not to buy at a sale where such rules are promulgated with such limitations of warranty; in fact the sellers might refuse by their rules to warrant at all, and then the doctrine of *caveat emptor* would apply; so that if there be a limited warranty the purchaser, in order to avail himself of the terms of the warranty, must comply with the conditions thereof.

Therefore, we are of the opinion that the verdict in this case is against the manifest weight of the evidence, viewing the evidence in connection with the law that must control.

We therefore find that there is error apparent upon the record, to the prejudice of the plaintiffs in error, in the charge of the court as above specified, and in overruling the motion for a new trial on the ground that verdict was against the weight of the evidence.

The cause is reversed for these reasons, with costs, and remanded to the court of common pleas for further proceedings and trial according to law.

Exceptions of defendant in error are noted.